May it please the Court, good morning. My name is Darren Miller and I represent the appellant Steven Bruhn. After revoking Mr. Bruhn's supervised release, the District Court is currently above the 5-11 months recommended guideline sentence. Today we ask this Court to vacate Mr. Bruhn's 40-month sentence and remand for a new sentencing hearing. Your Honors, plain procedural error occurred in this case, that being that the District Court based Mr. Bruhn's sentence on inferences not supported by the record. And essentially that occurred in two significant areas. The first one is related to You just painted the procedural error, the substantive question, which I know is commonly done in sentence revocation fields, but say again what the procedural error was? Yes, the procedural error is that the Court made inferences not supported by the record in sentencing Mr. Bruhn and that occurred in two different areas in the record. And what case says that's a procedural error? Stokes would be one, Molnar would be another. There are a variety of cases cited in both our briefs and the government's briefs. Well, I mean, it's procedural if the District Court relies on plainly erroneous facts, right? I mean, that's, I think, clear. But you're saying it's the inferences? Yes, inferences not supported by the record, yes. And the first one is where the Court actually stated why it decided to vary upward. And I'll just read the quick quote, the Court. So you're getting a golden ticket, Mr. I'm always worried about preservation of these issues because they frequently aren't. How did the District Court manifest these inferences? I'm not sure I understand your question, Your Honor. Well, you say the Court drew inferences. So either you are interpreting what the Court didn't say or write, or the Court wrote or said something that's the basis for the argument. And that's my question. Yes, and that's what I was about to discuss when... No, my question is specific. Okay. How and when did the Court manifest the inferences you're challenging? It manifested before the defense even had an opportunity to speak. How? When it was discussing why it was about to vary upward from the recommended guideline. And specifically, the Court said that Mr. Boone just wanted to serve your time, get this over with, and get back on the street and get back to the same conduct. And that's why I'm varying upward. And this is referring to when Mr. Boone was in teen challenge. He'd been released temporarily to attend teen challenge. And he did not participate. That part is correct. But the incorrect part and the unreasonable reference... It seems to me a sentencing court inevitably will and probably should disclose what it has studied before it came to the sentencing hearing and what it is inclined, what its tentative thinking is, unless something at the hearing causes it to rethink. That's simply giving all the lawyers, and particularly the defense team, an opportunity to anticipate and challenge that basically change the Court's view. And in my view, if you don't articulate an inference, if you don't object to an inference you are implying that cannot be addressed by the defense at sentencing, you're failing to preserve. It's like failing to object to the Court's explanation of its sentencing. And I have written more than once, we don't consider, we don't do plain error review of those kinds of allegations. Now, why should we do it here? Well, Your Honor, this Court did do plain error review in Stokes and Molnar and other cases. The last site of half a dozen cases on the point I'm making since those decisions? No, that's not necessary, Your Honor. I'm sure you're aware. I've written at least two or three opinions that said that. Yes, Your Honor. To my knowledge, Stokes, Molnar, and one of the cases we decided to remain good law, and that the District Court just cannot base a sentence on facts that are just not true. It's a matter of... Facts are not true. Well, specifically related to the teen challenge comments, when the Court said it wanted to get back to the same conduct. But when you look at the violation report, Mr. Bruin specifically said, and it says in the violation report, that he wanted to be released from teen challenge to get to a sober place to live. The District Court need not accept that testimony, right? I mean, the District Court can draw contrary inferences to what your client is suggesting. Yes, but our position is there is no reasonable inferences based on why Mr. Bruin... No reasonable. That sounds like a substantive reasonableness analysis. But you are disclaiming that, correct? Well, we're claiming that procedural error occurred. Only. What is the plain error that you're alleging? The plain error is that the Court made unreasonable inferences from the record, both when it was explaining why it was veering upward, saying that it was because Mr. Bruin wanted to get back to abusing drugs on the street, when there is no evidence. In fact, there's contrary evidence in the... The discussion thus far indicates the concern that there may be any error at all. But plain error is a higher standard. And objected to error.  What raises this to that higher standard of being obvious, so that it would... Those observing would know immediately the Court's going the wrong way. Yeah, I think it's clear and obvious again, because the violation report specifically contradicts what the judge said. The violation report said that Mr. Bruin wanted to be released to a sober living place. The district court said it was increasing the punishment specifically because he wanted to get back out in the streets and abuse drugs, which are... Well, that's an inaccurate shorthanding. He was recognizing a repeat, a recidivist for revocation sentencing. And basically saying, you don't get a free ride. Each time you do it, the penalty gets worse. And we have upheld that reasoning multiple times. So, the custody... Yes, I mean, the custody thing was in there. But that was just his excuse for continuing to do what the court was going to sequentially punish more harshly. Yes, Your Honor. Well, I mean, how can we see the case any other way? Your Honor, for the reasons identified both in the brief and here, it's that it's just an incorrect statement that... And also, when the court was issuing the sentence, he was referring... He said, fool me once, shame on you. Fool me twice, shame on me. Yeah, I mean, the record supports that. I mean, his original sentencing range was 70 to 87. He got time served and supervised release. From the district court's perspective, he got a break. One year later, he's back in front of the court. He was offered the opportunity to live under supervision, and he didn't take it. And that's exactly what... I guess I don't understand what the unreasonableness, especially as Judge Smith points out, on plain error, where that's obviously unreasonable. It looks to me like it's supported by the record. Well, what you said is correct, Your Honor, but it's when the court is saying, fool me once, meaning that Mr. Bruin somehow tricked the court into believing that he was someone that he was not. Well, he's saying, had I known this was going to happen, you wouldn't have gotten off so easily the first time. That's reasonable. If the court had said that, that would be reasonable. But he just said it in a different way. I disagree. I take it. Yes, I disagree. Looks like I'm out of time, Your Honor. I have no more time to reserve. So thank you for considering the case. I mean, these issues need to be pursued, and it's an uphill battle. And I just, well, revocation sentencing errors are, they're here all the time, but it's usually, usually, particularly if the revocation sentencing judge did the original sentence, there is a basis for the reasoning that doesn't need to be spelled out in detail. And to me, a judge that gives the lawyers at the start of the hearing, telling them what they have to shoot at or support, I remember in some civil cases in North Dakota, the North Dakota judges back a couple of judges ago, they'd come in on a summary judgment motion. They'd say, I've read all the briefs. Here's my thinking. What's wrong with it? And I thought that was helpful to the lawyers as opposed to prejudging the case. But anyway, that's what we're looking at and dealing with. I understand. Thank you, Your Honor. Ms. Healy? Thank you, Your Honors. May it please the Court. My name is Megan Healy on behalf of the United States. Our position is that there's no error here, that every comment made by the district court was amply supported by the record. And there was certainly no error rising to the level of a plain error that was clear or obvious. And further, on this record, the defendant cannot sustain his burden to show prejudice. I'll address a few things that came up in the Court's previous conversation. And Judge Wilkin, you ended your comments a moment ago that the judge coming in with his tentative thinking. The judge did do that here, and it's well supported by this Court's precedent. I cited the Jenkins case from 1998 in my brief that coming in with tentative planning shows diligence and careful preparation. And that's what it is here. Even before the comment about varying upward that Mr. Miller highlighted, as soon as the district court accepted the admissions to the violations, calculated the guideline range, the next thing he did was say, I'm hereby providing you notice, and also to your attorney, that I intend to vary upward in this case, and I'm looking at giving you a sentence of over three years for this violation. The purpose was to focus the party's argument as to why the district court should or should not take that action. How do you, how does the government view this? Is this, do you agree this is a purely procedural challenge? Your Honor, the way I approached it in my brief was that I responded to the clear error, but I viewed pages 17 to 22 as delving into substantive reasonableness, but because the appellant expressly said they were only raising a procedural error argument, I treated my response to that under adequate explanation, trying to fit a square peg into a round hole in procedural error to be able to provide the court a fulsome response to everything raised in their brief. So yes, I think that the error in the reply brief clarified this, that they're really focusing on clear error as to certain comments. The comments that I understood to be the subject of the clear error argument are set out on page 18 of the appellant's brief, that the comment, just wanted to serve your time, get this over, get back on the street, back to this conduct, that's why I'm varying upward. That's on page seven of the transcript. The comment in pronouncement of the sentence that he's not taking his addiction seriously, and then the comments about being fooled into a lenient sentence. For each of these comments that were highlighted, the record really has ample support for all of them, particularly looking first at the you're not taking your addiction seriously. The evidence before the court, or the information before the court, was that there was extensive efforts by the probation officer and by CPS to help Mr. Broon address his addiction, but that he was resistant to those efforts. The violation report, I point you to paragraphs 14, 18, and 19, which really outline this in some detail. There's also, the record also supports the district court's conclusion that Mr. Broon sought treatment to avoid custody or adverse supervised release consequences. The probation officer on page nine and 10 explained his take on the situation, that he was just going to Teen Challenge to try to get out of custody, and that he had told someone at Teen Challenge that indeed he was doing this just to get out of custody. In the violation report at paragraph 12, this was unobjected to, but the statement that he did not, Mr. Broon did not intend to participate in Teen Challenge. He only wanted a sober place to release to. Shows he had no interest in participating in treatment and just wanted to get out of custody. And of course, as came up earlier, previous leniency in a sentence, particularly where, Judge Loken, as you noted, where you have the same sentencing judge, and there's really only a year and a half between the original sentencing and the revocation, the judge has the familiarity with the history and characteristics and is allowed to consider that. The record shows that this, I'm sorry, the same probation officer who prepared the PSR or the same probation officer who supervised him. One of the supervising probation officers. Yes, the supervising probation officers. Who would have the primary input in the PSR, whether he or she authored it or not. I apologize, Your Honor. The initial PSR for the initial sentencing, I don't recall who authored that. The supervising probation officer from the date of the initial sentencing was the same probation officer the entire time he authored the violation report. Yes, that's correct. Same probation officer. And that is confirmed in the preliminary hearing transcript on page 5. Was that officer at the hearing? At the revocation hearing, yes, he was, Your Honor. He provided commentary on pages 9 and 10 of the transcript. He could be called by the defense. Yes, he certainly could. And there was no objection to his comments that Mr. Broon got out of custody after being arrested on the revocation warrant to go to this Teen Challenge program and that he didn't intend to participate and he was only going there to get out of custody. And there was no objection to his comments. There was no request to call him as a witness. With respect to the prejudice aspect, here there's ample support in the record that regardless of any alleged error, the sentence would not have been differenced. We look at the previous leniency provided, the extensive efforts provided to assist Mr. Broon in his resistance, his disappearing for nearly two weeks from the end of August to September 10th without contact with his probation officer and only reestablishing contact upon the threat of a warrant. And then his disappearing for six weeks from the end of September until his arrest date in mid-November after he found out that there was a warrant for his arrest. And then in addition, you have the admissions of multiple failed violation or multiple failed tests, skipping tests, leaving the district and violating the release order. And again, that you have the same judge. It's all in your brief, right? It's all in my brief, Your Honor. So if the court doesn't have any further questions, we respectfully ask that the court affirm the district court. Very good, thank you.  Mr. Miller, I think we understand the issues. You're out of time. Is there anything you'd really like to add at the end? Only if Your Honors are inclined.